LAKE ERIE AND WESTERN RAILROAD COMPANY v. MOLLOY.

[No. 11,163.    Filed March 28, 1922.]

1. PLEADING.—*Complaint.*—*Overruling Motion to Make More Specific.*—*Effect.*—Overruling a motion to make a complaint more specific by setting out facts to sustain conclusions pleaded, is deemed a decision, procured by and binding upon plaintiff, that all the facts known to, and relied on by, him to support the general averments were already stated in the complaint. p. 76.

2. PLEADING.— *Complaint.*— *Determining Sufficiency.*— *Conclusions of Law.*—In determining the sufficiency of a complaint to withstand a demurrer for want of facts, the court must disregard all conclusions of law, and look only to the facts and conclusions of facts alleged therein. p. 77.

3. RAILROADS.—*Crossing Accidents.*—*Collision with Automobile.*—*Complaint.*—*Sufficiency.*—In an action against a railroad company for damages to an automobile in collision with defendant's train on a crossing, a complaint alleging the existence of a street crossing crossed by defendant's tracks, and that defendant backed a train or cut of cars across it without sounding the whistle or bell or giving any warning signal of the approach thereof, etc., *held* to sufficiently disclose a duty on the part of defendant to make the complaint good as against demurrer.    p. 78.

4. RAILROADS.—*Crossing Accidents.*—*Collision with Automobile.*—*Contributory Negligence.*—*Jury Question.*—In an action against a railroad company for damages to an automobile in collision with defendant's train on a crossing, even if the absence of a flagman did not give plaintiff, who was driving the automobile, the right to assume that the way was clear, the complaint, further alleging that before proceeding to drive over the railroad tracks plaintiff reduced his speed to not more than eight miles an hour, and looked and listened attentively, and, discovering no train approaching, and observing the absence of the flagman, started to cross the tracks, when, without any signal, a cut of cars was backed against the machine, all without plaintiff's fault, *held* sufficient to withstand a demurrer on the ground that plaintiff's contribu-

tory negligence was the proximate cause of the damage to the automobile. pp. 78, 79.

5. PLEADING.—*Complaint.*—*Construction.*—*Contributory Negligence.*—*General and Specific Averments.*—In an action for damages to an automobile in a collision, general averments in the complaint that plaintiff was without fault will not be controlling on the question of contributory negligence when the facts specifically alleged conclusively show, as a matter of law, that plaintiff was guilty of negligence which proximately contributed to the damage sustained. p. 79.

6. RAILROADS.—*Crossing Accidents.*—*Collision with Automobile.*—*Contributory Negligence.*—*Evidence.*—In an action against a railroad company for damages to an automobile in a collision on a crossing, verdict for plaintiff *held* sustained by the evidence, as regards the issue of contributory negligence. p. 80.

7. DAMAGES.—*Damage to Automobile.*—*Measure of Recovery.*—*Purchase of Automobile at Less Than Market Price.*—The measure of damages for injury to an automobile is the difference in its value before and after the injury, regardless of the fact that the sales agent from whom the owner purchased the automobile gave him the benefit of the agent's commission. p. 83.

8. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Evidence.*—*Absence of Flagman.*—In an action against a railroad company for damages to plaintiff's automobile struck by a train on a crossing in which the complaint alleged that defendant had kept a watchman at the crossing for many years to warn travelers of the approach of trains, and that plaintiff relying upon the absence of the watchman at the time of the accident as meaning that no train was approaching, proceeded to drive upon the tracks, evidence of the manner and custom of the watchman in warning travelers and as to his custom of retiring to the shelter house provided by defendant when no train was approaching, was proper on the question of contributory negligence. p. 84.

From Delaware Circuit Court; *William A. Thompson,* Judge.

Action by William J. Molloy against the Lake Erie and Western Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Silverberg, Bracken & Gray* and *John B. Cockrum,* for appellant.

*Ermel E. Lindsey* and *White & Haymond,* for appellee.

McMAHAN, J.—This is an action by appellee to recover damages for injuries to an automobile alleged to have been caused by reason of appellant's negligence. The complaint, omitting the formal parts thereof, alleged that appellant's railroad with two main and several switch tracks crossed Walnut street, a main and constantly traveled street in the city of Muncie; that immediately west of said street and south of the railroad tracks are buildings, sign-boards and switch tracks, on which freight cars were left standing so that the view from the street to the southwest was completely obstructed; that appellant for many years kept a flagman at said crossing, and that at the time mentioned in the complaint it was "the duty of said flagman to keep a lookout for locomotive engines and trains of cars approaching said street on defendant's railroad tracks and to warn" persons traveling over such crossing of the approach of cars, etc.; that when engines or trains approached "said watchman's duty is to blow a whistle and stand in the middle of the street displaying a sign upon which is the word 'Stop;'" that when the watchman did not so flag the crossing, persons driving or walking, crossed said tracks, as the absence of the watchman designated that no engine or cars were approaching. On May 2, 1920, appellant had a cut of cars on its south switch track within three feet of the west line of said street; that as appellee was driving on said street approaching said tracks from the south, he was, by reason of said buildings, sign-boards and cut of cars, unable to see any train approaching from the southwest on the main track; that as he approached said tracks he reduced his speed to not more than eight miles an hour, and looked each way as far as his vision extended and listened attentively for approaching trains, but saw no

train approaching; that as he approached said crossing he reduced the speed of his automobile and looked for appellant's flagman who was not to be seen, and relying upon the absence of said flagman as meaning that no engine or train of cars was approaching, and that it was safe for him to drive over said tracks, he proceeded, and as he drove upon said tracks, and just as he reached them, appellant "carelessly and negligently backed a cut of cars from the southwest upon its said tracks without blowing the whistle or ringing the bell or giving any signal or notice whatsoever of the approach either from the flagman or train crew and carelessly and negligently backed its said cars upon and against plaintiff's said automobile with great force and violence" thereby causing such destruction to such automobile that it was beyond repair and no longer fit for use by reason of which appellee was "damaged in the sum of two thousand dollars;" that the damage was without any fault or negligence on the part of appellee.

The second paragraph is not set out in the briefs, but appellant says it is substantially the same as the first except that it alleges that during the year 1911, the city of Muncie passed an ordinance requiring appellant to employ and station at streets in said city crossed by appellant's railroad a suitable person whose duty it should be to remain at such crossings and warn persons of the approach of trains and that for such purpose such persons should be provided with suitable flags.

The questions presented arise upon the overruling of a motion to make each paragraph of complaint more specific and of the demurrers to each paragraph of the complaint and a motion for a new trial.

Appellant filed a motion to make the complaint more specific in the following particulars:   (1) To state specifically in the first paragraph the facts from which arose the alleged duty of the flagman to keep a lookout

and to warn people driving over the crossing of the approach of cars; (2) to state specifically in the first paragraph the facts from which arose the watchman's duty to blow a whistle, etc.; (3) and (4) to state definitely in the first paragraph wherein appellant negligently backed the cut of cars across the street and to state the facts constituting the alleged negligence; (5) to state specifically in each paragraph the nature and extent of the damages to the automobile; (6) to state specifically in each paragraph wherein appellee was damaged $2,000; (7) to make a copy of the city ordinance part of the complaint; and (8) the same as the third and fourth except it applied to the second paragraph of the complaint. This motion was overruled, to which appellant excepted.

The Supreme Court in *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740, in discussing the effect of overruling of a motion to
1.  make more specific said:

"This must be deemed a decision by the trial court, procured by and binding upon the appellee, adjudging that all the facts known to and relied on by the appellee tending to support such general averments were already stated in this paragraph of the complaint. A statute now provides that recitals and conclusions in a pleading shall be deemed an allegation of the facts so recited and of the facts necessary to sustain such conclusions, so far as they are 'necessary to the sufficiency of such pleading,' subject to the right of the adverse party, by motion, to require that the facts to sustain the conclusions shall be set out. §343a Burns' Supp. 1921, Acts 1915 p. 123. This can only mean that where a proper motion to make the pleading more specific by setting out the facts is duly made, and is overruled, the pleading must be regarded as already stating specifically the facts relied on to support the conclusions

to which such motion was addressed. And as so understood appellant was not harmed in this instance by the ruling on its motions."

In harmony with this authority we hold that there was no reversible error in overruling the motion to make more specific.

Appellant's demurrer was for want of facts, and was accompanied by a memorandum that the complaint was insufficient for the following reasons: "(1) Each paragraph of the complaint discloses on its face that the damages to the plaintiff's automobile were not proximately caused by any negligent act on the part of the defendant. (2) Each paragraph of complaint discloses on its face that the proximate cause of the damage to plaintiff's automobile was plaintiff's own contributory negligence."

In determining the sufficiency of the complaint to withstand the demurrer we must disregard all conclusions of law and look only to the facts and conclusions of facts alleged in the complaint. Disregarding therefore the allegations relative to the "duty" of the flagman as being conclusions of law, each paragraph alleges that appellant for many years had kept a flagman at the crossing in question, and that when such flagman did not warn or flag the crossing, people would cross the tracks on said streets as the absence of the flagman designated that no engine or cars were approaching; that on the day of the accident appellee approached the crossing from the south, but because of the buildings, sign-boards and freight cars on appellant's side track, he was unable to see any train approaching; that he reduced the speed of his automobile to not more than eight miles an hour and looked and listened for approaching trains; that he looked and watched for the flagman who was not to be seen, and relying upon the absence of the flagman as indicating

that no engine or train of cars was approaching, and that it. was safe for him to drive over the tracks, he drove over the tracks, and just as his automobile reached the tracks appellant negligently backed a cut of cars upon its track without blowing the whistle, ringing the bell, or giving any signal whatever of the approach of such cars, either from the flagman or train crew and negligently backed said cars against appellee's automobile with great violence thereby causing such damages to the automobile that it was beyond repair, all of which was alleged to have occurred by reason of the facts therein alleged and without any negligence on the part of appellee.

Appellant's first contention is that the complaint does not disclose the existence of any duty on its part. We cannot agree with this contention. The complaint alleges the existence of a public street crossed by appellant's railroad and that appellant backed a train or cut of cars across the same without blowing the whistle or ringing the bell and without giving any signal of any kind of the approach of such train or cut of cars. This allegation is sufficient to withstand a demurrer.

3.

Waiving the contention of appellee that the memorandum attached to the demurrer is too general to present any question as to the insufficiency of the complaint, we do not think the complaint shows, as a matter of law, that the negligence of appellee was the proximate cause of the injuries to his automobile. It may be, as contended by appellant, that the absence of a flagman did not give appellee the right to assume the way was clear, but the complaint, in addition to alleging that the flagman was not to be seen, and that appellee, relying upon the absence of the flagman as indicating that no engine or train of cars was approaching and that it was safe for him to drive over

4.

the tracks, proceeded to do so, the complaint further alleges that before doing so he reduced the speed of his automobile to not more than eight miles an hour and looked and listened attentively each way for approaching trains, and seeing no train approaching and the flagman not to be seen, he started to cross the tracks when appellant, without giving any signal, backed the cut of cars upon its tracks with great force against the automobile, all of which was without any negligence on the part of appellee.   The allegation that the damage was done without any fault on the part of appellee will not be controlling on the question of contributory negligence when the facts specifically alleged in the complaint show, as a matter of law, that the plaintiff was guilty of negligence which proximately contributed to his injury.  But we do not think that the allegations of the complaint show such a state of facts as to condemn the complaint on the theory that the facts alleged conclusively show that the proximate cause of the injury was appellee's negligence.  We therefore hold that the court committed no error in overruling the demurrer to the first paragraph of the complaint.  Since the second paragraph is not set out in the briefs in full, we will assume that its allegations are as full and specific as the allegations in the first paragraph of complaint, and that in addition to the allegations contained in the first paragraph, it alleges that the city of Muncie passed an ordinance which required appellant to employ and station at the crossing in question some suitable person whose duty it was to be and remain at such crossing and to warn people of the approach of all trains on appellant's railroad, and that such watchman should be provided with a flag suitable for that purpose.  Appellant was therefore not only required to give warnings as required by §5431 Burns 1914, §4020 R. S. 1881, but it was also required under

said ordinance to keep a flagman at this crossing, and according to the allegations of the complaint it had for years, pursuant to such ordinance, maintained such flagman and provided him with a suitable flag that he might be able to notify and warn travelers of the approach of trains, but at the time appellee approached the crossing the flagman was not seen and did not notify or warn appellee of the approaching cut of cars as required by the ordinance. We do not deem it necessary to enter into any further discussion relative to the second paragraph of the complaint. What we said with reference to the first paragraph applies with equal force to the second. There was no error in overruling the demurrer to the second paragraph of the complaint.

Appellant's motion for a new trial, the specifications of which are: (1) That the verdict is not sustained by sufficient evidence; (2) excessive damages; (3) giving and refusing to give certain instructions; (4) admitting certain evidence, being overruled, appellant contends that such ruling is reversible error.

Appellant contends that the verdict is not sustained by sufficient evidence. This contention is based upon the theory that appellee's negligence was the proximate cause of the collision. The evidence in some respects is conflicting and not clear as to the number of railroad tracks at the place where the accident occurred. There is evidence tending to show that appellee was driving north on Walnut street in the city of Muncie, and that at the place where the collision took place there were at least four railroad tracks crossing the street,—the first track from the south being appellant's south switch track, the next the main track, the next the south Big Four track, and the next the north main of the Big Four. The Big Four tracks are about eight feet apart, and sixty-seven feet north of appellant's main track. Other tracks are referred to in

the evidence, but their location is not clear. There is also a track connecting appellant's track with the Big Four tracks. The city of Muncie by ordinance required appellant to keep a flagman at this crossing to warn travelers on the street of approaching trains, and appellant had for many years in compliance with this ordinance kept a flagman at this crossing. On the day of the accident, there was a cut of two or more freight cars standing on the most southern of appellant's tracks and on the west side of Walnut street, the east end of this cut of cars being two or three feet west of the curb on the west side of the street. There were buildings and a sign-board on the west side of the street, which with the cars standing on the switch prevented a person traveling from the south on said street from seeing any distance to the west along the main line of appellant's road. There was a small house (the watchman's shanty) just east of the street and about fifteen feet north of appellant's main line, where the watchman was in the habit of remaining when no engine or cars were approaching. When an engine or cars were approaching, it had been his custom for years to take a flag with the word "Stop" printed on it, and go out into the street and flag or warn travelers on the street of the approaching danger. If there were no engines or cars approaching he would remain in the shanty. It also appears that at the time of or just before the accident in question, this flagman had gone to a switch stand or target a short distance east of Walnut street and turned the target so the cut of cars on the main line and west of the street could be switched onto the Big Four tracks. After turning the target, the flagman picked up his flag and walked into the street, when he says he saw appellee, and that he (appellee) had stopped just south of the track; that appellee started to cross the tracks, and

"killed" his engine when on the track, at which time the train was ten or fifteen feet away; that some one called to appellee and told him to jump, and that he did so, and left his automobile standing on the track, where it was struck. This witness testified that this cut of cars was standing about a car length west of the street before it started to back across the street; that when he first saw the automobile, it was standing still about fifteen feet south of the track.

The evidence clearly shows that appellee, before driving onto the tracks, stopped his automobile, looked and listened for the approach of cars on appellant's tracks. He knew that a flagman was stationed at this crossing and that it was the duty of the flagman to warn travelers of approaching trains, and of the custom of the flagman to stand in the street when trains were approaching and to give notice of such approaching trains, and that when no train was approaching, for the flagman to retire to his shanty. He testified that the flagman was not in sight when he approached the crossing, nor when he stopped his automobile and looked, nor when he started to cross the tracks; that he saw no sign of any approaching train, did not see the flagman, and heard no whistle or noise of any kind to lead him to believe a train was approaching; that just about the time he got on the tracks somebody yelled at him, and he then knew he was in danger, but did not know on which side the danger was located; he glanced to the left, and saw the cut of cars almost upon him; in the meantime he had thrown the automobile into neutral and it had almost come to a stop, when he saw the only thing to do was to try to save himself; that he reached for and succeeded in opening the door and getting out just before the train struck the automobile and that the flagman appeared after the automobile was struck; when he first stopped and looked, he saw a

watchman on the west side of the street near the sidewalk and north of the Big Four tracks; this man had a flag in his hands, but was not flagging at that time though he had just flagged a Big Four train that had just passed.

This evidence is not such that we can say appellee was guilty of negligence. Indeed it impresses us with the idea that appellee used more care than the average person uses under such circumstances.

The next contention is that the damages assessed are excessive. The contention of appellant is that since appellee only paid $1,400 for the automobile and 7. had driven it about 700 miles and realized $200 from the wreckage, that the damages assessed were excessive. The automobile was new, the regular selling price being $1,725, but the sales agent through whom he bought it being his son-in-law the agent gave him the benefit of the agent's commission. Appellant argues that appellee should be compensated for his loss, but that he should not profit by his transaction. If by "transaction" is meant the collision, this contention is well taken, but if it refers to the purchase of the automobile, then it cannot prevail. Suppose the automobile had been a gift to appellee, he would be entitled to damages the same as if he had purchased it. The measure of damages was the difference in the value of the automobile before and after the collision.

We have examined all the instructions given, as well as those requested by appellant, and which the court refused to give. We find no reversible error in the giving of any of such instructions nor in the refusal to give. Instruction No. 3 given at the request of appellee on the question of preponderance of the evidence is subject to criticism, but we do not think the giving of it is reversible error. The jury was fully and fairly instructed on all the issues. The instructions tendered

and refused, of which complaint is made, in so far as they were correct, were covered by the instructions given. There was no reversible error in the giving or in the refusal to give any of the instructions of which complaint is made.

Appellee and two or three other witnesses, over appellant's objections, testified to having traveled over this crossing many times, and described the manner 8. and custom of the flagman at this particular crossing in flagging approaching travelers on the street and as to his habit and custom of retiring to the shelter house when no train was approaching. Appellee was required to allege and prove the absence of contributory negligence, and as bearing upon that question it was proper under the allegations of the complaint to show that appellant had stationed a flagman at this crossing, and to show the custom and plan used by the flagman in giving signals and warnings of approaching trains, and we see no error in permitting evidence to be introduced to the effect that when no danger to travelers was present, that the flagman retired to the shelter house. It has been frequently held in action by a servant against a master that the servant has the right to rely on the warnings and signals customarily given in the conduct of the business, and if the master fails to give these, he is guilty of negligence. 26 Cyc §1168; *Anderson* v. *Northern Mill Co.* (1890), 42 Minn. 424, 44 N. W. 315; *Hough* v. *Grants, etc., Co.* (1902), 41 Ore. 531, 69 Pac. 655; *Anderson* v. *Ogden, etc., R. Co.* (1892), 8 Utah 128, 30 Pac. 305. This evidence was, in our judgment, proper, not on the question of appellant's negligence but as bearing upon the question of appellee's contributory negligence.

There was no error in overruling the motion for a new trial.

Judgment affirmed.